CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 12 2010

JOHN F. CORCORAN, CLERK
BY:
　　　DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

|  |  |  |
|---|---|---|
| WILLIAM LEE BRADSHAW, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 7:10CV00225 |
| v. | ) ) ) | MEMORANDUM OPINION |
| MR. HARDEN, ET AL., | ) ) ) | By: Glen E. Conrad Chief United States District Judge |
| Defendants. | ) | |

Plaintiff William Lee Bradshaw, a Virginia inmate proceeding pro se, has filed this civil rights action, pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. In his complaint, Bradshaw alleges that the defendants, supervisory officials at Augusta Correctional Center, failed to protect him against an assault by other inmates. Upon review of the record, the court finds that the complaint as amended must be dismissed.

## Background

Bradshaw alleges the following sequence of facts from which his claims arise. On May 28, 2008, as Bradshaw was walking down the stairs to exit his unit for outside recreation, another inmate came up behind him and started "clipping the sole[s]" of Bradshaw's shoes. Bradshaw stopped to ask him about the "unnecessary contac[t]." One other inmate was in the staircase at the time. In the recreation yard, these two inmates came up to Bradshaw and started making "false allegations" about what had been said on the stairs. Bradshaw denied their accusations and walked away.

When Bradshaw returned to his unit, he saw the two inmates sitting together at a table. He decided to clean his cell. The booth officer in his unit issued him some cleaning supplies, including a long-handled broom and a long-handled mop. The two inmates who had spoken to him on the recreation yard managed to gain control of the cleaning equipment and used it to assault Bradshaw. He suffered physical injuries to his face and elbow.

Officers placed the attackers and Bradshaw in administrative segregation after the altercation. Bradshaw received no disciplinary charge related to the incident, however. Officers interviewed him to determine whether his attackers were his enemies. Before he was released to the general population, officers required him to sign a form indicating that he did not fear for his safety in the general population. Believing that his attackers would remain in segregation and/or be transferred to another area of the prison, Bradshaw signed the form and was released. Thereafter, he wrote to officials, expressing his fear that his assailants would continue to pose a danger to him if they were released into the general population. After these inmates served their time in administrative segregation, they were reassigned to the general population unit where Bradshaw was housed. They were released from prison a few months later.

Medical records submitted with Bradshaw's complaint concerning examination and treatment he received after the assault indicate that he suffered a 1/2-inch laceration over his left eye, which was taped with "Dermabond." Two other, superficial lacerations to his left cheek and an abrasion on his elbow were cleaned and dressed. The nurse noted a silver-dollar-sized swollen area on his left elbow and gave him ice packs to hold on the elbow and his jaw. He was also provided with ibuprofin for several days. Later examination and X-rays indicated that his

jaw was not broken. Bradshaw complains that he has three permanent scars as a result of the attack and that he suffered a slight loss of vision in his left eye, which is now sensitive to light.

Bradshaw believes that written prison policy at the time of the assault authorized only inmates designated as "housemen" to possess long-handled brooms or mops without staff supervision. Bradshaw is not a houseman, but an officer nevertheless checked out the long-handled cleaning tools to him. As defendants to this lawsuit, Bradshaw names Lt. Harden and Sgt. Burke, who were assigned, respectively, as active building supervisor and active building sergeant on the day of the assault. He asserts that these supervisory officers should have known that it was dangerous to allow inmates to possess long-handled cleaning equipment in the presence of other inmates, but that they failed to ensure that the booth officers enforced the cleaning supplies policy and failed to ensure that officers on the floor were assigned to monitor inmates' use of such cleaning equipment.[1] He also alleges that the defendants later failed to protect him by releasing his assailant inmates into the same housing area.[2]

The court filed the complaint conditionally and notified Bradshaw that he needed to allege facts regarding actions personally undertaken by each defendant in violation of his rights and regarding how defendants knew that their actions placd him at risk. The court granted him an opportunity to amend, and he has submitted an amendment which the court will grant.

---

[1] Bradshaw mentions the name of the booth officer, but specifically identifies this individual as a "non-defendant."

[2] Bradshaw also alleges that the defendants retaliated against him for his filing of grievances by assigning him to a cell with a homosexual inmate. Because inmates have no constitutional right to a prison grievance procedure, their use of an existing procedure does not constitute exercise of a constitutional right so as to provide basis for a retaliation claim under § 1983. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir.1994) (finding that to prove § 1983 claim of retaliation, inmate must demonstrate that alleged retaliatory act "was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right").

## Discussion

To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). A complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under § 1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted." The factual allegations in the complaint must contain "more than labels and conclusions" and "must be enough to raise a right to relief above a speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). After review of Bradshaw's allegations as amended, the court concludes that he fails to allege facts stating any plausible claim actionable under § 1983.

The Eighth Amendment protects prisoners from cruel and unusual living conditions. Rhodes v. Chapman, 452 U.S. 337 (1981). In order to state a claim of constitutional significance regarding prison conditions, a plaintiff must allege facts demonstrating that the challenged conditions resulted in a deprivation of a basic human need that was objectively "sufficiently serious" and (2) that, subjectively, the defendant prison officials acted with a sufficiently "culpable state of mind" with regard to the conditions. Wilson v. Seiter, 501 U.S. 294, 298 (1991). To satisfy the objective element of a conditions claim, the plaintiff must show that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions. Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993). To satisfy the subjective element of a conditions claim, plaintiff must show that the defendant officials acted with deliberate indifference toward the risk of harm–that the official was aware of

facts from which he could draw an inference that a substantial risk of harm existed, that he actually drew that inference, and that he disregarded the risk by failing to take "reasonable measures" to alleviate the risk. Farmer v. Brennan, 511 U.S. 825, 835-37 (1994).

An official cannot be held automatically liable for violations of plaintiff's rights through the actions of subordinate officials; the doctrine of respondeat superior is inapplicable to §1983 actions. Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1133, 1142-43 (4th Cir. 1982). A supervisory official can be liable for damages under §1983 if plaintiff demonstrates: (1) that the conduct by subordinate employees which directly caused the deprivation was undertaken to effectuate an official policy or custom for which the official was responsible, id., or (2) that the supervisory official was aware of a pervasive, unreasonable risk of harm to plaintiff from a specified source and failed to take corrective action himself, out of his own deliberate indifference or his tacit authorization of inaction by subordinates. Slakan v. Porter, 737 F.2d 368, 372-73 (4th Cir. 1984). In this context, plaintiff ordinarily cannot prove supervisory liability based on a single incident or isolated incidents. Id. at 373.

Under these principles, Bradshaw's allegations fail to state any claim that the supervisory officials he has sued are liable for his injuries. According to his own allegations, the written policy did not authorize inmates, other than housemen, to use long-handled cleaning equipment without staff supervision. Therefore, the officers who allowed Bradshaw to have this type of equipment and to use it without staff supervision were not acting according to the policy. Bradshaw does not allege any specific facts concerning specific events prior to the May 28, 2008 assault that would have put the defendants on notice of their subordinates' failure to enforce the cleaning supplies policy. Indeed, Bradshaw offers no indication that floor officers previously had

allowed inmates to use long-handled equipment without supervision. As he thus fails to prove that defendants knew the policy was not being enforced, he cannot hold them liable for tacitly authorizing nonenforcement. Accordingly, Bradshaw fails to demonstrate that defendants knew of a specific risk that inmates would be harmed by long-handled cleaning equipment and so fails to prove that their failure to enforce the policy constituted deliberate indifference that caused him to be injured on May 28, 2008.[3]

Bradshaw had an opportunity to amend to name as defendant the individual who issued him the cleaning equipment, but he chose not to do so. In any event, his allegations would not support a claim against this individual under § 1983. Since he alleges only an isolated incident of inmates using cleaning utensils as weapons with which to assault each other, his allegations support, at most, a claim that this subordinate officer negligently failed to follow the written policy. Mere negligence by prison officials does not implicate an inmate's due process rights. Daniels v. Williams, 474 U.S. 327, 332 (1986). For the stated reasons, the court will summarily dismiss Bradshaw's claims regarding the monitoring of cleaning equipment, pursuant to § 1915A(b)(1).

Bradshaw's allegations also fail to state any actionable § 1983 claim against the defendants for failing to protect him after the assault. Officials could rightfully have relied on Bradshaw's signed statement indicating that he did not fear for his safety if released to the general population. His exhibits indicate that if he had not signed this declaration, he would not have been placed in the general population, and he alleges no facts on which he could reasonably

---

[3] Bradshaw offers evidence that the policy prohibiting inmates from using long-handled cleaning equipment without supervision has been enforced since at least October 2008. Therefore, his request for injunctive relief directing that the policy be enforced is moot.

have believed that his assailants would not also be released to the general population at some time in the future. Bradshaw does not allege that he asked for protective custody after the assailant inmates were released to his unit or that he provided defendants with any evidence supporting his fear that these inmates would harm him. Indeed, his allegations do not indicate that these inmates threatened or harmed him in any way during the brief period between their release to Bradshaw's unit and their release from prison within a couple months after the assault. As Bradshaw does not demonstrate that defendants knew these inmates posed a substantial risk of harm to him after the incident, he fails to demonstrate deliberate indifference as required under Farmer, 511 U.S. at 835-37. Accordingly, the court will dismiss this claim, pursuant to § 1915A(b)(1).

## Conclusion

For the stated reasons, the court concludes that Bradshaw's allegations fail to state any actionable claim under § 1983. Accordingly, the court will dismiss the complaint as amended, pursuant to § 1915A(b)(1). An appropriate order will issue this day.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this memorandum opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5). The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 12th day of July, 2010.

_____
Chief United States District Judge